UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JACQUELINE ROJAS, ADRIAN LOPEZ,
DANIELLE CARPENTER, ROSALIA CALIXTO,
EDWIN TLATELPA (a minor, by Dolores Tlatelpa, his
Mother and Natural Guardian), and DEYSI TLATELPA, on
behalf of themselves and others similarly situated

Plaintiffs,

- against -

BRONX MOON LLC d/b/a BLUE MOON
MEXICAN CAFÉ, BLUE MOON MEXICAN
CAFE LLC, and HOWARD FELIXBROD and
JEFF LEWIS, Individually

Defendant(s).
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Docket No.

**COMPLAINT AND
JURY DEMAND**

Plaintiffs Jacqueline Rojas ("Rojas"), Adrian Lopez ("Lopez"), Danielle Carpenter
("Carpenter"), Rosalia Calixto ("Calixto"), Edwin Tlatelpa ("E. Tlatelpa"), and Deysi Tlatelpa ("D.
Tlatelpa"), by their attorneys FRUMKIN & HUNTER LLP, allege the following as their Complaint,
on behalf of themselves and on behalf of all other persons similarly situated, against Defendants
Bronx Moon LLC d/b/a Blue Moon Café and Blue Moon Mexican Café ("Blue Moon") and
Defendants Howard Felixbrod and Jeff Lewis, Individually:

## NATURE OF THE ACTION

1.      This lawsuit seeks to recover unpaid minimum wage compensation for Plaintiffs, who
are bussers, servers, and bartenders, and other similarly situated current and former employees at
Blue Moon pursuant to Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; the New York
Labor Law ("NYLL") § 190 *et seq.* and § 650 *et seq.*; and New York State Department of Labor
Regulations.

2.      This lawsuit also seeks to recover statutory damages as a result of Defendants'

failure to furnish written wage notices and accurate wage statements, in violation of the NYLL and

the Wage Theft Prevention Action ("WTPA").

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28

U.S.C. § 1331 because this case arises under a federal law, the FLSA; and 28 U.S.C. § 1337 because

this case arises under a federal act that regulates commerce.

4.      This Court has supplemental jurisdiction over Plaintiffs' New York State law claims

pursuant to 28 U.S.C. § 1367(a), because these claims are so closely related to Plaintiffs' claims

under the FLSA that they form part of the same case or controversy under Article III of the United

States Constitution.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391, as Defendants are

located in the Southern District of New York, Plaintiffs reside in this district, and  the unlawful

actions complained of occurred in this district, and the records relevant to such practices are

maintained in the district.

6.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C.

§§ 2201 and 2202.

## PARTIES

**A.      Plaintiffs**

### *Jacqueline Rojas*

7.      Plaintiff Jacqueline Rojas ("Rojas") is a current employee of Blue Moon LLC d/b/a

Blue Moon Mexican Café ("Blue Moon") at the Bronxville, NY location. She has worked there since

November 2012 as a hostess and a server.

8.      Plaintiff Rojas resides in Yonkers, New York.

***Adrian Lopez***

9.      Plaintiff Adrian Lopez ("Lopez") is a current employee of Blue Moon at the Bronxville, NY location. He has worked there since March 2013, as a busboy, server, and bartender.

10.     Plaintiff Lopez resides in Yonkers, New York.

***Danielle Carpenter***

11.     Plaintiff Danielle Carpenter ("Carpenter") is a current employee of Blue Moon at the Bronxville, NY location. She has worked there since January 2016, as server and a bartender.

12.     Plaintiff Carpenter resides in Yonkers, New York.

***Rosalia Calixto***

13.     Plaintiff Rosalia Calixto ("Calixto") is a current employee of Blue Moon. She commenced employment with Blue Moon at the Englewood, NJ location in March 2003 as a server. In 2005, she began working at the Bronxville, NY location as well. As of April 2013, she ceased working at the Englewood, NJ location and only worked at the Bronxville, NY location.

14.     Plaintiff Calixto resides in Yonkers, New York.

***Edwin Tlatelpa***

15.     Plaintiff Edwin Tlatelpa ("E. Tlatelpa") is a current employee of Blue Moon at the Bronxville, NY location. He has worked there since August 2016 as a busboy.

16.     Plaintiff E. Tlatelpa resides in Yonkers, New York.

17.     Plaintiff E. Tlatelpa is sixteen years old and his mother, Dolores Tlatelpa, brings this lawsuit on his behalf.

3

### *Deysi Tlatelpa*

18.    Plaintiff Deysi Tlatelpa ("D. Tlatelpa") has been employed by Blue Moon at the Bronxville, NY location. She has worked there since November 2014 as a server.

19.    Plaintiff D. Tlatelpa resides in Yonkers, New York.

**B.    Defendants**

20.    Upon information and belief, Defendant BRONX MOON LLC d/b/a BLUE MOON MEXICAN CAFÉ is a domestic limited liability company operating and existing under the laws of the State of New York, with a principal place of business at 7-27 Pondfield Road, Bronxville, NY 10708. Upon information and belief,  BLUE MOON MEXICAN CAFE LLC operates restaurants at 42 Kinderkamack Road, Woodcliff Lake, NJ 07677; 23 E Palisade Avenue, Englewood, NJ 07631; and 327 Franklin Avenue, Wycoff, NJ 07481.

21.    Upon information and belief, Defendant Blue Moon is an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

22.    Upon information and belief, Defendant Blue Moon has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

23.    Upon information and belief, Defendant Blue Moon has an annual gross volume of sales in excess of $500,000.

24.    Blue Moon is part of the "restaurant industry" within the meaning of New York Labor Law, because it is an eating and drinking place that prepares and offers food and beverages for human consumption on its premises with catering and delivery services available to the public. N.Y. Comp. Codes R. & Regs. tit. 12, § 137-3.1.

25.     Upon information and belief, Defendants Howard Felixbrod ("Felixbrod") and Jeff Lewis ("Lewis") are owners of Blue Moon.

26.     Defendants Felixbrod and Lewis exercised sufficient control over Blue Moon's operations to be considered Plaintiffs' and other similarly situated current and former employees' employer under the FLSA and NYLL.

27.     Throughout Plaintiffs' and other similarly situated current and former employees' employment, Defendant Felixbrod has exercised power over personnel decisions at Blue Moon, including the power to hire and fire employees, control their conditions of employment, set their wages and method of payment, and maintain employment records.

28.     Throughout Plaintiffs' and other similarly situated current and former employees' employment, Defendant Lewis has exercised power over personnel decisions at Blue Moon, including the power to hire and fire employees, control their work schedules and conditions of employment, set their wages and method of payment, and maintain employment records

29.     The Corporate Defendant and the Individual Defendants are collectively referred to herein as the "Defendants."

30.     At all times relevant to this action, Plaintiffs and other similarly situated current and former employees were Defendants' employees within the meaning of the FLSA and NYLL.

## COLLECTIVE ACTION AND CLASS ACTION ALLEGATIONS

31.     Pursuant to 29 U.S.C. § 216(b) Plaintiffs seek to prosecute their claims as a collective action on behalf of all persons who are or were formerly employed by Defendants in the United States at any time since August 1, 2014 to the entry of judgment in this case (the "Collective Action Period"), who were not paid the minimum wage (the "Collective Action Members").

32.     Pursuant to Fed.R.Civ. P. 23(a), (b)(2), and (b)(3), Plaintiffs seek to prosecute their New York Labor claims on behalf of all persons who are or were formerly employed by Defendants in the United States at any time since August 1, 2011, to the entry of judgment in this case (the "Class Period"), who were not paid the minimum wage (the "Class").

33.     Prosecution of this matter as a class is necessary because the persons in the Class identified above are so numerous that joinder of all members is impracticable.

34.     Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of defendants, upon information and belief, there are at least 100 members of the class during the Class Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys, or knowledge of their claims.

35.     Plaintiffs will fairly and adequately protect the interests of both the Class Members and the Collective Action Members and have retained counsel that is experienced and competent in the fields of employment law and class/collective action litigation.

36.     Plaintiffs' claims are typical of the claims of the Class and Collective Action Members, and Plaintiffs have no interest that is contrary to, or in conflict with, the members of this class action or collective action.

37.     Furthermore, inasmuch as the damages suffered by Plaintiffs and the individual Class Members and Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the class and collective actions to individually seek redress for the wrongs done to them.

38.     Questions of law and fact common to the members of the class and collective actions predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members.

39.     Among the common questions of law and fact under the FLSA and NYLL common to Plaintiffs and other Class Action and Collective Action Members include the following:

a.      Whether Defendants failed and/or refused to pay the Collective Action Members minimum wages for all hours worked, in violation of the FLSA and the supporting federal regulations;

b.      Whether Defendants failed and/or refused to pay the Class Members minimum wages for all hours worked, in violation of the NYLL and the supporting New York State Department of Labor Regulations;

c.      Whether Defendants failure to furnish the Class Members written wage notices, in violation of the NYLL, the WTPA, and the supporting New York State Department of Labor Regulations;

d.      Whether Defendants failure to furnish the Class Members accurate wage statements, in violation of the NYLL, the WTPA, and the supporting New York State Department of Labor Regulations;

e.      Whether Defendants' violations of the FLSA are willful, as that term is used within the context of the FLSA; and

f.      Whether Defendants' can prove that it had a good faith basis to believe that its underpayment of wages was in compliance with the law.

40.     Plaintiffs know of no difficulty that will be encountered in the management of this litigation that will preclude its maintenance as a class or collective action.

7

## STATEMENT OF FACTS

**A.   Jacqueline Rojas ("Rojas")**

41.   Plaintiff Rojas was employed by Defendants at Bronxville, NY beginning in or about November 2012.

42.   As of November 2012, Rojas was a hostess, and her duties included greeting and seating guests. At that time, Rojas worked part-time and was paid $8.00 per hour.

43.   In or about the summer of 2013, Rojas became a server. Once Rojas commenced college in or about August 2013, Rojas worked part-time only on the weekends and during school breaks.

44.   As a server, Rojas was paid $2.13 per hour. Since taxes were deducted from her pay checks, her weekly pay checks were almost always $0.00.

45.   Rojas noticed from the very beginning of her employment that Defendants calculated her hours worked by the hours indicated on her work schedule, and not by the amount of hours she actually worked.

46.   Rojas was not paid for the hours she worked prior to a shift (to conduct opening duties) or hours worked after a shift (to conduct closing duties).

47.   In addition, Defendants altered and manipulated the time clock records by clocking employees in or out after their shifts started or before their shifts ended.

48.   Rojas was not paid for approximately three to four hours of work per week.

49.   In January 2017, a meeting was held with the Blue Moon staff. Vice President Coleen Grennan was present and she advised that from that point on, all servers, bussers, and bartenders would be paid $7.50 per hour.

50.   Since January 2017, she has been paid $7.50 per hour.

8

51.     For about two to three weeks, Rojas was paid for all hours worked, but then realized that again her hours worked were being reduced on her pay stubs, indicating she worked less hours than she actually did.

52.     At no time was Rojas notified she was being paid less than the actual minimum wage because she was a tipped employee and Defendants were taking a tip credit.

53.     None of Rojas' pay stubs indicate Defendants were taking a tip credit, as required under the NYLL.

54.     At no time did Rojas receive a notice of her pay rate or any notices of change in her pay rate.

55.     At all times, Defendants manipulated Rojas' time records (except for a brief two to three week period after the January 2017 meeting), so as to pay her for less hours than she worked.

**B.     Adrian Lopez ("Lopez")**

56.     Plaintiff Lopez was employed by Defendants at Bronxville, NY beginning in or about March 2013.

57.     As of March 2013, Lopez was a part-time busser/runner. At first, he was paid $50.00 per shift as a runner regardless of how many hours he worked, and he was paid $6.00 per hour as a busser.

58.     In or about 2014, Lopez became a part-time server/bartender.

59.     As a server, Lopez was paid $2.13 per hour. Since taxes were deducted from his pay checks, his weekly pay checks were almost always $0.00.

60.     As a bartender, Lopez had been paid $40.00 in cash for shifts worked from Sunday through Thursday and $20.00 in cash for shifts worked from Friday through Saturday.

61.    Lopez noticed from the very beginning of his employment that Defendants calculated his hours worked by the hours indicated on his work schedule, and not by the amount of hours he actually worked.

62.    Lopez was not paid for the hours he worked prior to a shift (to conduct opening duties) or hours worked after a shift (to conduct closing duties).

63.    In addition, Defendants altered and manipulated the time clock records by clocking employees in or out after their shifts started or before their shifts ended.

64.    Lopez was not paid for approximately three to four hours of work per week.

65.    In January 2017, a meeting was held with the Blue Moon staff. Vice President Coleen Grennan was present and she advised that from that point on, all servers, bussers, and bartenders would be paid $7.50 per hour.

66.    Since January 2017, he has been paid $7.50 per hour.

67.    For about two to three weeks, Lopez was paid for all hours worked, but then realized that again his hours worked were being reduced on his pay stubs, indicating he worked less hours than he actually did.

68.    At no time was Lopez notified he was being paid less than the actual minimum wage because he was a tipped employee and Defendants were taking a tip credit.

69.    None of Lopez's pay stubs indicate Defendants were was taking a tip credit, as required under the NYLL.

70.    At no time did Lopez receive a notice of his pay rate or any notices of change in his pay rate.

71.    At all times, Defendants manipulated Lopez's time records (except for a brief two to three week period after the January 2017 meeting), so as to pay him for less hours than he worked.

10

C.    **Danielle Carpenter ("Carpenter")**

72.    Plaintiff Carpenter was employed by Defendants at Bronxville, NY beginning in or about January 2016.

73.    As of January 2016, Carpenter was a server. At that time, Carpenter worked part-time.

74.    As of the Summer 2016, Carpenter worked as both a server and a bartender.

75.    As a server, Carpenter was paid $2.13 per hour. Since taxes were deducted from her check, her weekly pay checks were almost always $0.00.

76.    As a bartender, Carpenter had been paid $40.00 in cash for shifts worked from Sunday through Thursday and $20.00 in cash for shifts from Friday through Saturday.

77.    Carpenter noticed from the very beginning of her employment that Defendants calculated her hours worked by the hours indicated on her work schedule, and not by the amount of hours she actually worked.

78.    Carpenter was not paid for the hours she worked prior to a shift (to conduct opening duties) or hours worked after a shift (to conduct closing duties).

79.    In addition, Defendants altered and manipulated the time clock records by clocking employees in or out after their shifts started or before their shifts ended.

80.    Carpenter was not paid for approximately three to four hours of work per week.

81.    In January 2017, a meeting was held with the Blue Moon staff. Vice President Coleen Grennan was present and she advised that from that point on, servers, bussers, and bartenders would be paid $7.50 per hour.

82.    Since January 2017, she has been paid $7.50 per hour.

11

83.     For about two to three weeks, Carpenter was paid for all hours worked, but then realized that again her hours worked were being reduced on her pay stubs, indicating she worked less hours than she actually did.

84.     At no time was she notified she was being paid less than the actual minimum wage because she was a tipped employee and Defendants were taking a tip credit.

85.     None of Carpenter's pay stubs indicate Defendants were taking a tip credit, as required under the NYLL.

86.     At no time did Carpenter receive a notice of her pay rate or any notices of change in her pay rate.

87.     At all times, Defendants manipulated Carpenter's time records (except for a brief two to three week period after the January 2017 meeting), so as to pay her for less hours than she worked.

**D.     Rosalia Calixto ("Calixto")**

88.     Plaintiff Calixto was employed by Defendants at Englewood, NJ beginning in or about March 2003.

89.     As of March 2003, Calixto was a server at this location only. However, in or about 2005, Calixto began working at the Bronxville, NY location as well.

90.     As of April 2013, Calixto has only worked from the Bronxville, NY location.

91.     At all times while working at the Englewood location, Calixto was paid $5.00 per week.

92.     From 2005 to April 2016, Calixto was paid $10.00 per week for working in the Bronxville, NY location. Therefore, from 2005 through April 2013, Ms, Calixto earned $15 per week for working at both the Bronxville, NY and Englewood, NJ location.

93.     From April 2016 to January 2017, Calixto was paid $2.13 per hour. Since taxes were deducted from her check, her weekly pay checks were almost always $0.00.

94.     Calixto noticed from the very beginning of her employment that Defendants calculated her hours worked by the hours indicated on her work schedule, and not by the amount of hours she actually worked.

95.     Calixto was not paid for the hours she worked prior to a shift (to conduct opening duties) or hours worked after a shift (to conduct closing duties).

96.     In addition, Defendants altered and manipulated the time clock records by clocking employees in or out after their shifts started or before their shifts ended.

97.     Calixto was not paid for approximately three to four hours of work per week.

98.     In January 2017, a meeting was held with the Blue Moon staff. Vice President Coleen Grennan was present and she advised that from that point on, servers, bussers, and bartenders would be paid $7.50 per hour.

99.     Since January 2017, she has been paid $7.50 per hour.

100.    For about two to three weeks, Calixto was paid for all hours worked, but then realized that again her hours worked were being reduced on her pay stubs, indicating she worked less hours than she actually did.

101.    At no time was she notified she was being paid less than the actual minimum wage because she was a tipped employee and Defendants were taking a tip credit.

102.    None of Calixto's pay stubs indicate Defendants were taking a tip credit, as required under the NYLL.

13

103.    At no time did Calixto receive a notice of her pay rate or any notices of change in her pay rate.

104.    At all times, Defendants manipulated Calixto's time records (except for a brief two-three week period after the January 2017 meeting), so as to pay her for less hours than she worked.

**E.    Edwin Tlatelpa ("E. Tlatelpa")**

105.    Plaintiff E. Tlatelpa commenced employment with Defendants at Bronxville, NY beginning in or about August 2016.

106.    As of August 2016, E. Tlatelpa has worked as a busser. At first, he was paid $8.75 per hour.

107.    However, E. Tlatelpa noticed from the very beginning of his employment that Defendants calculated his hours worked by the hours indicated on his work schedule, and not by the amount of hours he actually worked.

108.    E. Tlatelpa was not paid for the hours he worked prior to a shift (to conduct opening duties) or hours worked after a shift (to conduct closing duties).

109.    In addition, Defendants altered and manipulated the time clock records by clocking employees in or out after their shifts started or before their shifts ended.

110.    E. Tlatelpa was not paid for approximately three to four hours of work per week.

111.    In January 2017, a meeting was held with the Blue Moon staff. Vice President Coleen Grennan was present and she advised that from that point on, all servers, bussers, and bartenders would be paid $7.50 per hour.

112.    Since January 2017, he has been paid $7.50 per hour.

113.    For about two to three weeks, E. Tlatelpa was paid for all hours worked, but then realized that again his hours worked were being reduced on his pay stubs, indicating he worked 1-2 hours less than he actually did.

114.    At no time did E. Tlatelpa receive a notice of his pay rate or any notices of change in his pay rate.

115.    At all times, Defendants manipulated E. Tlatelpa's time records (except for a brief two to three week period after the January 2017 meeting), so as to pay him for less hours than he worked.

**F.    Deysi Tlatelpa ("D. Tlatelpa")**

116.    Plaintiff D. Tlatelpa commenced employment with Defendants at Bronxville, NY beginning in or about November 2014.

117.    As of November 2014 and at all times during her employment, D. Tlatelpa worked as a server.

118.    As a server, D. Tlatelpa was paid $2.13 per hour. Since taxes were deducted from her check, her weekly pay checks were almost always $0.00.

119.    D. Tlatelpa noticed from the very beginning of her employment that Defendants calculated her hours worked by the hours indicated on her work schedule, and not by the amount of hours she actually worked.

120.    D. Tlatelpa was not paid for the hours she worked prior to a shift (to conduct opening duties) or hours worked after a shift (to conduct closing duties).

121.    In addition, Defendants altered and manipulated the time clock records by clocking employees in or out after their shifts started or before their shifts ended.

15

122.    D. Tlatelpa was not paid for approximately three to four hours of work per week.

123.    In January 2017, a meeting was held with the Blue Moon staff. Vice President Coleen Grennan was present and she advised that from that point on, all servers, bussers, and bartenders would be paid $7.50 per hour.

124.    Since January 2017, she has been paid $7.50 per hour.

125.    For about two to three weeks, D. Tlatelpa was paid for all hours worked, but then realized that again her hours worked were being reduced on her pay stubs, indicating she worked less hours than she actually did.

126.    At no time was she notified she was being paid less than the actual minimum wage because she was a tipped employee and Defendants were taking a tip credit.

127.    None of D. Tlatelpa's pay stubs indicate Defendants were taking a tip credit, as required under the NYLL.

128.    At no time did D. Tlatelpa receive a notice of her pay rate or any notices of change in her pay rate.

129.    At all times, Defendants manipulated D. Tlatelpa's time records (except for a brief two to three week period after the January 2017 meeting), so as to pay her for less hours than she worked.

### FIRST CAUSE OF ACTION
### (FEDERAL - VIOLATION OF MINIMUM WAGE - INCORRECT MINIMUM WAGE RATE)

130.    Plaintiffs, on behalf of themselves and the members of the Collective Action, repeat and reallege all foregoing paragraphs as if fully set forth herein.

131.    This claim concerns Defendants' failure to pay Plaintiffs the correct minimum wage.

132.    The FLSA requires that employers pay employees a minimum wage for all hours worked.

133.    Defendants are employers within the meaning of 29 U.S.C. §§ 203(e) and 206(a), and employed Plaintiffs and the members of the Collective Action.

134.    The minimum wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.* and the supporting federal regulations apply to Defendants.

135.    Defendants were required to pay Plaintiffs and the members of the Collective Action the full regular minimum wage for each hour worked, or if Defendants were taking a tip credit, the correct minimum wage for tipped employees.

136.    Defendants did not meet the necessary requirements to pay the minimum wage for tipped employees, in that they did not notify employees they were taking a tip credit, they did not always pay employees the correct tipped minimum wage per hour, and they did not accurately record tips paid to employees to ensure that they received at least the regular minimum wage.

137.    Therefore, Defendants were required to pay employees the full, regular minimum wage.

138.    Defendants failed to pay Plaintiffs and the members of the Collective Action the minimum wages to which they were entitled under the FLSA.

139.    Defendants did not pay Plaintiffs and the members of the Collective Action the full regular minimum wage for each hour worked.

140.    Defendants were aware or should have been aware that the practices described in this Complaint were unlawful, and did not make a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the members of the Collective Action.

17

141.    As a result of Defendants' willful violations of the FLSA, Plaintiffs and the members of the Collective Action suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, pre- and post-judgment interest, attorneys' fees and costs of this action, and other compensation pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
**(FEDERAL - VIOLATION OF MINIMUM WAGE - UNPAID HOURS WORKED)**

142.    Plaintiffs, on behalf of themselves and the members of the Collective Action, repeat and reallege all foregoing paragraphs as if fully set forth herein.

143.    This claim concerns Defendants' failure to pay Plaintiffs any wages for time worked.

144.    The FLSA requires that employers pay employees a minimum wage for all hours worked.

145.    Defendants are employers within the meaning of 29 U.S.C. §§ 203(e) and 206(a), and employed Plaintiffs and the members of the Collective Action.

146.    The minimum wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq*. and the supporting federal regulations apply to Defendants.

147.    Defendants were required to pay Plaintiffs and the members of the Collective Action the full regular minimum wage for each hour worked, or if Defendants were taking a tip credit, the correct minimum wage for tipped employees.

148.    Defendants did not meet the necessary requirements to pay the minimum wage for tipped employees, and therefore, were required to pay employees the full, regular minimum wage.

149.     Defendants failed to pay Plaintiffs and the members of the Collective Action any wages, let alone the minimum wage for all hours worked, to which they were entitled under the FLSA.

150.     Defendants failed to pay Plaintiffs and the members of the Collective Action any wages for approximately three to four hours of work each week.

151.     Defendants were aware or should have been aware that the practices described in this Complaint were unlawful, and did not make a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the members of the Collective Action.

152.     As a result of Defendants' willful violations of the FLSA, Plaintiffs and the members of the Collective Action suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, pre- and post-judgment interest, attorneys' fees and costs of this action, and other compensation pursuant to 29 U.S.C. § 216(b).

### THIRD CAUSE OF ACTION
### (NEW YORK - VIOLATION OF MINIMUM WAGE - INCORRECT MINIMUM WAGE RATE)

153.     Plaintiffs, on behalf of themselves and the members of the Class Action, repeat and reallege all foregoing paragraphs as if fully set forth herein.

154.     This claim concerns Defendants' failure to pay Plaintiffs the correct minimum wage.

155.     The NYLL requires that employers pay employees a minimum wage for all hours worked.

156.    Defendants are employers within the meaning of the NYLL §§ 190, 651(5), 652, and supporting New York State Department of Labor Regulations, and employed Plaintiffs and the members of the Class Action.

157.    The minimum wage provisions of Article 19 of the NYLL and the supporting New York State Department of Labor Regulations apply to Defendants.

158.    Defendants were required to pay Plaintiffs and the members of the Class Action the full correct minimum wage for each hour worked, or if Defendants were taking a tip credit, the correct minimum wage for tipped employees.

159.    Defendants did not meet the necessary requirements to pay the minimum wage for tipped employees, in that they did not notify employees they were taking a tip credit, they did not always pay employees the correct tipped minimum wage per hour, and they did not accurately record tips paid to employees to ensure that they received at least the regular minimum wage.

160.    Therefore, Defendants were required to pay employees the full, regular minimum wage.

161.    Defendants failed to pay Plaintiffs and the members of the Class Action the minimum wages to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations.

162.    Defendants did not pay Plaintiffs and the members of the Class Action the full regular minimum wage for each hour worked.

163.    Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiffs and the members of the Class Action the minimum hourly wage, and the Defendants did not have a good faith basis in failing to pay the minimum hourly wage.

164.    As a result of Defendants' violations of the NYLL, Plaintiffs and the members of the Class Action suffered damages by being denied minimum wages in accordance with the NYLL in amounts to be determined at trial, and are entitled to recovery of such amounts, their unpaid wages, reasonable attorneys' fees and costs of the action, liquidated damages, and pre- and post-judgment interest.

## FOURTH CAUSE OF ACTION
## (NEW YORK - VIOLATION OF MINIMUM WAGE - UNPAID HOURS WORKED)

165.    Plaintiffs, on behalf of themselves and the members of the Class Action, repeat and reallege all foregoing paragraphs as if fully set forth herein.

166.    This claim concerns Defendants' failure to pay Plaintiffs any wages for time worked.

167.    The NYLL requires that employers pay employees a minimum wage for all hours worked.

168.    Defendants are employers within the meaning of the NYLL §§ 190, 651(5), 652, and supporting New York State Department of Labor Regulations, and employed Plaintiffs and the members of the Class Action.

169.    The minimum wage provisions of Article 19 of the NYLL and the supporting New York State Department of Labor Regulations apply to Defendants.

170.    Defendants were required to pay Plaintiffs and the members of the Class Action the full regular minimum wage for each hour worked, or if Defendants were taking a tip credit, the correct minimum wage for tipped employees.

171.    Defendants did not meet the necessary requirements to pay the minimum wage for tipped employees, and therefore, were required to pay employees the full, regular minimum wage.

172.    Defendants failed to pay Plaintiffs and the members of the Class Action any wages, let alone the minimum wages for all hours worked, to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations.

173.    Defendants failed to pay Plaintiffs any wages for approximately three to four hours of work each week.

174.    Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiffs and the members of the Class Action the minimum hourly wage, and the Defendants did not have a good faith basis in failing to pay the minimum hourly wage.

175.    As a result of Defendants' violations of the NYLL, Plaintiffs and the members of the Class Action suffered damages by being denied earned minimum wages in accordance with the NYLL in amounts to be determined at trial, and are entitled to recovery of such amounts, their unpaid wages, reasonable attorneys' fees and costs of the action, liquidated damages, and pre- and post-judgment interest.

### FIFTH CAUSE OF ACTION
### (NEW YORK - FAILURE TO PROVIDE WAGE NOTICES)

176.    Plaintiffs, on behalf of themselves and the members of the Class Action, repeat and reallege all foregoing paragraphs as if fully set forth herein.

177.    The NYLL and Wage Theft Prevention Act ("WTPA"), as well as the NYLL's interpretive regulations, such as but not limited to 12 N.Y.C.R.R. Part 146, require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

178.    From its enactment on April 9, 2011, through 2014, the WTPA also required employers to provide an annual written notice of wages to be distributed on or before February 1 of each year of employment.

179.    In violation of NYLL §191, Defendants failed to furnish Plaintiffs and the members of the Class Action, at the time of hiring or whenever there was a change to their rate of pay, with wage notices containing the rate or rates of pay and basis thereof; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law; in violation of the NYLL §195(1).

180.    Due to Defendants' violation of NYLL § 195 (1), Plaintiffs and the members of the Class Action are entitled to recover from Defendants liquidated damages of $50 per workday that the violation occurred, up to a maximum of $5,000, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL §198(1-b).

## SIXTH CAUSE OF ACTION
### (NEW YORK WTPA - FAILURE TO PROVIDE WAGE STATEMENTS)

181.    Plaintiffs, on behalf of themselves and the members of the Class Action, repeat and reallege all foregoing paragraphs as if set forth herein.

182.    The NYLL and WTPA require employers to provide employees with an accurate wage statement each time they are paid.

23

183.    Throughout Plaintiffs' and the members of the Class Action's employment with Defendants, Defendants paid Plaintiffs and the members of the Class Action without providing a wage statement at the end of every pay period accurately listing, *inter alia*, credits and allowances, if any, claimed as part of the minimum wage, in violation of the NYLL § 195(3) and the New York State Department of Labor Regulations.

184.    Due to Defendants' violation of NYLL § 195(3), Plaintiffs and the members of the Class Action are entitled to recover from Defendants liquidated damages of $250 per workday that the violation occurred, up to a maximum of $5,000, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL §198(1-d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all other similarly situated members of the Collective Action and Class Action respectfully request the following relief:

A.    Certification of this action as a class action pursuant to Fed.R.Civ.P. 23(b)(2) and (3) on behalf of members of the Class, and appointing Plaintiffs and their counsel to represent the Class.

B.    Designation of this action as a collective action on behalf of the Collection Action Members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 289 U.S.C. § 216(b), and appointing Plaintiffs and their counsel to represent the Collective Action members.

24

C.     A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL.

D.     An injunction against Defendants and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, as provided by law, from engaging in each of the unlawful practices, polices, and patterns set forth herein.

## ON THE FIRST AND SECOND COUNTERCLAIMS

E.     Unpaid minimum wages in amounts to be determined at trial;

F.     Liquidated damages;

G.     Pre- and post-judgment interest;

H.     Attorneys' fees and costs of this action; and

I.     Other compensation pursuant to 29 U.S.C. § 216(b).

## ON THE THIRD AND FOURTH COUNTERCLAIMS

J.     Unpaid minimum wages in amounts to be determined at trial;

K.     Liquidated damages in the amount of 100% of the unpaid wages pursuant to NYLL 198(1)-a;

L.     Pre- and post-judgment interest;

M.     Reasonable attorneys' fees and costs of this action; and

N.     Such other and further relief as seem just and proper to this Court.

## ON THE FIFTH COUNTERCLAIM

O.     Liquidated damages of $50 per workday that the violation occurred, up to a maximum of $5,000, due to Defendants' violation of NYLL § 195 (1); and

P.     Reasonable attorneys' fees and costs and disbursements of the action, pursuant to the NYLL §198(1-b).

## ON THE SIXTH COUNTERCLAIM

Q.      Liquidated damages of $250 per workday that the violation occurred, up to a maximum of $5,000, due to Defendants' violation of NYLL § 195(3); and

R.      Reasonable attorneys' fees and costs and disbursements of the action, pursuant to the NYLL §198(1-d).

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs and the members of the Collective Action and Class Action demand a trial by jury on all issues in the Complaint so triable.

Dated: White Plains, New York
August 1, 2017

FRUMKIN & HUNTER LLP

By:    /s/ William D. Frumkin
        William Frumkin
        *Attorneys for Plaintiffs and the members of the Collective Action and Class Action*
        1025 Westchester Avenue, Suite 309
        White Plains, New York 10604
        (914) 468-6096

F:\APPLICAT\WP\Rojas et al\COMPLAINT.08.01.17 FINAL SENT.wpd

## CONSENT TO SUE UNDER
## FAIR LABOR STANDARDS ACT

I, Jacqueline Rojas, am an employee currently employed by BRONX MOON LLC d/b/a BLUE

MOON MEXICAN CAFÉ and/or related entities. I consent to be a plaintiff in the above-captioned

action to collect unpaid wages, and authorize the filing of this consent. I have been provided with

a copy of a retainer agreement with the law firm of Frumkin & Hunter LLP, and I agree to be bound

by its terms.

Dated: July 25th , 2017
       White Plains, New York

_____
Jacqueline Rojas

Sworn to before me this
25 day of July , 2017

_____
Notary Public

JANET HOWELL
Notary Public, State of New York
Registration No. 01HO6158498
Qualified in Westchester County
Commission Expires January 2, 2019

27

CONSENT TO SUE UNDER
FAIR LABOR STANDARDS ACT

I, Adrian Lopez, am an employee currently employed by BRONX MOON LLC d/b/a BLUE

MOON MEXICAN CAFÉ and/or related entities. I consent to be a plaintiff in the above-

captioned action to collect unpaid wages, and authorize the filing of this consent. I have been

provided with a copy of a retainer agreement with the law firm of Frumkin & Hunter LLP, and I

agree to be bound by its terms.

Dated: July 25 , 2017
White Plains, New York

Adrian Lopez

Sworn to before me this
25 day of July , 2017

Notary Public

JANET HOWELL
Notary Public, State of New York
Registration No. 01HO6158493
Qualified in Westchester County
Commission Expires January 2, 2019

## CONSENT TO SUE UNDER
## FAIR LABOR STANDARDS ACT

I, Danielle Carpenter, am an employee currently employed by BRONX MOON LLC d/b/a

BLUE MOON MEXICAN CAFÉ and/or related entities. I consent to be a plaintiff in the above-

captioned action to collect unpaid wages, and authorize the filing of this consent. I have been

provided with a copy of a retainer agreement with the law firm of Frumkin & Hunter LLP, and I

agree to be bound by its terms.

Dated: __July 25__, 2017
      White Plains, New York

                                      _Danielle Carpenter_
                                      Danielle Carpenter

Sworn to before me this
25 day of July, 2017

_Jan Howell_
Notary Public

                    JANET HOWELL
            Notary Public, State of New York
            Registration No. 01HO6158493
            Qualified in Westchester County
            Commission Expires January 2, 2019

29

## CONSENT TO SUE UNDER
## FAIR LABOR STANDARDS ACT

I, Rosalia Calixto, am an employee currently employed by BRONX MOON LLC d/b/a BLUE

MOON MEXICAN CAFÉ and/or related entities. I consent to be a plaintiff in the above-

captioned action to collect unpaid wages, and authorize the filing of this consent. I have been

provided with a copy of a retainer agreement with the law firm of Frumkin & Hunter LLP, and I

agree to be bound by its terms.

Dated: July, 25 , 2017
      White Plains, New York

                                            _Rosalia Calixto_
                                            Rosalia Calixto

Sworn to before me this
25 day of July , 2017

_Janet Howell_
Notary Public

                                 JANET HOWELL
                            Notary Public, State of New York
                            Registration No. 01HO6158493
                            Qualified in Westchester County
                            Commission Expires January 2, 2019

## CONSENT TO SUE UNDER
## FAIR LABOR STANDARDS ACT

I, Edwin Tlatelpa, am an employee currently employed by BRONX MOON LLC d/b/a BLUE

MOON MEXICAN CAFÉ and/or related entities. I consent to be a plaintiff in the above-

captioned action to collect unpaid wages, and authorize the filing of this consent. I have been

provided with a copy of a retainer agreement with the law firm of Frumkin & Hunter LLP, and I

agree to be bound by its terms.

Dated: JULY 25 , 2017
       White Plains, New York


                                        _Edwin Tlatelpa_
                                        Edwin Tlatelpa

                                        _Dolores Tlatelpa_
                                        Dolores Tlatelpa


Sworn to before me this
25 day of July , 2017


_____
Notary Public

          JANET HOWELL
          Notary Public, State of New York
          Registration No. 01HO6158493
          Qualified in Westchester County
          Commission Expires January 2, 2019

31

## CONSENT TO SUE UNDER
## FAIR LABOR STANDARDS ACT

I, Deysi Tlatelpa, am an employee currently employed by BRONX MOON LLC d/b/a BLUE

MOON MEXICAN CAFÉ and/or related entities. I consent to be a plaintiff in the above-

captioned action to collect unpaid wages, and authorize the filing of this consent. I have been

provided with a copy of a retainer agreement with the law firm of Frumkin & Hunter LLP, and I

agree to be bound by its terms.

Dated: _July 25th_, 2017
     White Plains, New York

                                              Deysi Tlatelpa

Sworn to before me this
25 day of _July_, 2017

_____
Notary Public

               JANET HOWELL
       Notary Public, State of New York
        Registration No. 01HO6158493
       Qualified in Westchester County
      Commission Expires January 2, 2019

32